## A05A0990. SMALL v. SAVANNAH INTERNATIONAL MOTORS, INC.

(619 SE2d 738)

MILLER, Judge.

Barbara Small sued Savannah International Motors, Inc. ("Motors"), asserting numerous claims arising out of her purchase of a used car. She appeals the trial court's grant of summary judgment to Motors on all claims. Small also appeals the trial court's denial of her motion for summary judgment as to Motors's liability on her claims for breach of implied and express warranties and violation of 49 USC § 32701 et seq. (the "Odometer Act"). For the reasons set forth below, we conclude that the trial court erred in granting summary judgment to Motors as to Small's Odometer Act claim, but we affirm the trial court's grant of summary judgment to Motors on her other claims. We also affirm the trial court's denial of Small's motion for summary judgment as to liability.

On appeal from the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell*, 254 Ga. App. 553, 553-554 (562 SE2d 731) (2002).

So viewed, the evidence shows that on June 7, 1999, Small and her husband went to Motors's place of business to shop for an automobile. They told the salesperson that they wanted a car that would be reliable transportation and that they did not want a car with a lot of mechanical problems. The salesperson showed them a 1994 BMW and made the following representations regarding the vehicle: (i) that it was in "good" condition; (ii) that it was in good mechanical condition; and (iii) that the car had been driven 50,000 miles. The salesperson also told them that the car had a "Texas Salvage title" because it had been stolen and recovered shortly thereafter, but that the car had not been damaged and had not been in a wreck.

Small agreed to purchase the BMW for $19,995. She took possession of the car on or about June 7, 1999, and signed an invoice listing the purchase price and stating that the car was sold "as-is," with no warranty, and that an "[i]nsurance company issued a Texas Salvage title after [the] car was recovered from theft." Small also signed an installment purchase contract providing that she had purchased the car upon the terms and conditions set forth in the contract. The contract included a merger clause stating that the contract was the entire agreement and that no party had relied on any representations other than those specifically set forth therein. Motors assigned the installment purchase contract to a third-party

bank, but the purchase contract provided that the holder was subject to all claims and defenses that Small could assert against Motors.

After Small purchased the BMW, her husband, the car's primary user, decided to trade it in for another vehicle because he and his wife were thinking about "adding on to the family." When the husband went to various dealerships to see about trading in the BMW for another vehicle, dealership appraisers told him that the car had been in a flood and that the odometer appeared to have been rolled back. He then went to visit Motors with the intent of discussing the "problems with my car." Although no one at Motors was willing to talk with him during his first visit, he returned twice more and met with Motors's owner both times. The husband asked Motors to trade the BMW for another vehicle or to refund the purchase price. Motors's owner offered to trade the BMW for one of four cars, none of which was acceptable to the husband, but refused to refund the purchase price.

At his deposition, the husband admitted that he still operates the BMW, that he likes the vehicle, and that he and his wife continue to make installment loan payments on the car. According to the husband, the vehicle's only operating problems had been with the electrical system and the radiator, and these problems had not caused him to want to return the vehicle.

Small sued Motors asserting claims for (i) revocation of acceptance of the sales contract; (ii) rescission of the contract on account of Motors's fraud and deceit; (iii) breach of express and implied warranties; (iv) violation of the Georgia Fair Business Practices Act (OCGA § 10-1-390 et seq.) (the FBPA); (v) violation of the Magnuson-Moss Warranty Act (15 USC § 2301 et seq.); and (vi) violation of the Odometer Act.[1] Motors moved for summary judgment on all claims, and Small moved for summary judgment as to Motors's liability on her claims. The trial court granted summary judgment to Motors on all claims and denied Small's motion for summary judgment. Small appeals.

1. Small claims the trial court erred in finding that she did not revoke her acceptance of the BMW under OCGA § 11-2-608 (1), which allows the buyer to revoke acceptance of a good "whose nonconformity substantially impairs its value to [her]." We disagree. "[A] buyer who purports to revoke [her] acceptance of goods may be found to have re-accepted them if, after such revocation, [she] performs acts which are inconsistent with the seller's ownership of the goods." (Citation and punctuation omitted.) *Olson v. Ford Motor Co.*, 258 Ga. App. 848,

---

[1] Small also asserted claims for breach of the implied duty of good faith and Uniform Deceptive Trade Practices Act (OCGA § 10-1-370 et seq.), but does not contest the trial court's grant of summary judgment to Motors on these claims.

850 (1) (575 SE2d 743) (2002). After the Smalls attempted to return the car to Motors, they continued to drive the vehicle and pay the car note, which was inconsistent with the revocation of their acceptance of the vehicle. See id. at 850-851 (buyer continued paying note, taxes, and insurance on truck, which was inconsistent with his revocation of acceptance). As such, the trial court properly granted summary judgment to Motors on this claim.

2. Small also contends that she may maintain an action for rescission of the purchase contract due to Motors's alleged fraud and deceit. We disagree.

The Smalls continued to use the BMW extensively after attempting to return the car to Motors, and exercised control over the car consistent with that of an owner and inconsistent with repudiation of the contract. See *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 380 (436 SE2d 94) (1993) ("[i]f a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it") (citation and punctuation omitted). Furthermore, the third-party bank holding Small's installment purchase contract was subject to all defenses that Small could assert against Motors, and Small therefore fails to show that her continued obligation to the bank allowed her to use the car while successfully maintaining an action for contract rescission against Motors. See id. Compare *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589, 590 (1) (411 SE2d 518) (1991). Accordingly, the trial court did not err in granting summary judgment to Motors on Small's claim for rescission on account of fraud.

3. Alternatively to her claims for revocation and rescission, Small sued for breach of express and implied warranties. Motors is also entitled to summary judgment on these claims because, without considering if the claims are otherwise valid, Small has failed to show that she suffered damages.

"The measure of damages in a breach of warranty action is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." (Citations and punctuation omitted.) *Monroe v. Hyundai Motor America*, 270 Ga. App. 477, 478 (606 SE2d 894) (2004); OCGA § 11-2-714 (2).

Although the purchase price of the BMW was evidence of the value of the car as warranted (*Monroe*, supra, 270 Ga. App. at 478), Small presents no evidence of the value of the car as accepted, but only the wholesale trade-in value of the BMW an indeterminate time after the transaction. In response to Motors's claim that she cannot show damages, Small merely points to her claims for revocation and

rescission as establishing the measure of her recovery. This is insufficient to support her claim for damages. Accordingly, Motors was entitled to summary judgment on her breach of implied and express warranty claims. See id. at 480 (even if defendant had breached its warranty in selling vehicle, plaintiff's failure to present competent evidence of damages was sufficient to authorize summary judgment to the defendant on plaintiff's breach of warranty claims). See also *Ficklin v. Hyundai Motor America*, 272 Ga. App. 61, 63-64 (2) (611 SE2d 732) (2005) (plaintiff's failure to submit competent evidence of the value of the allegedly defective car when accepted authorized grant of summary judgment to defendant on plaintiff's express and implied warranty claims); *Williams v. Dienes Apparatus*, 200 Ga. App. 205, 207-208 (2) (a) (407 SE2d 408) (1991) (third-party plaintiff's failure to show value of the equipment delivered in a defective condition authorized directed verdict in favor of third-party defendant).

4. Small claims the trial court erred in granting summary judgment to Motors on her claim under the FBPA. We disagree.

"The FBPA forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." (Citation and punctuation omitted.) *Henderson v. Gandy*, 270 Ga. App. 827, 829 (4) (608 SE2d 248) (2004). The deceptive practices Small alleged to be in violation of the FBPA include that (i) Motors represented the BMW had characteristics, uses, and benefits it did not have; (ii) Motors represented the car was of a particular standard, quality or grade when it was not; (iii) Motors concealed that the car had been in a wreck; and (iv) Motors failed to acknowledge her rejection or revocation of acceptance of the car.

> Although the FBPA provides administrative remedies for any violation of the Act, a private right of action is available only to a person who suffers injury or damages as a result of a violation. Accordingly, we have held that to prevail on a private cause of action under the FBPA, a private individual must establish three elements: a violation of the Act, causation, and injury. . . . We have consistently held that in accordance with the statutory requirements of the FBPA, the measure of damages to be applied for an FBPA violation is that of actual injury suffered. The general provisions of OCGA § 51-12-2 (a) damages recoverable without proof of amount are not applicable.

(Punctuation and footnotes omitted.) *Moore-Davis Motors v. Joyner*, 252 Ga. App. 617, 618-619 (1) (556 SE2d 137) (2001). "Actual damages," for purposes of the FBPA, means relief other than the refund of the purchase price and restitution. See *Colonial Lincoln-Mercury Sales v. Molina*, 152 Ga. App. 379, 381 (6) (262 SE2d 820) (1979).

The trial court found that Small failed to show that she was injured by Motors's alleged violation of the FBPA, and we agree. The Smalls showed no concern with the BMW's mechanical performance other than minor problems with the electrical system and radiator that the husband deposed did not cause him to want to return the car. Small deposed that she recalled no problems with driving the car or need for repair work. The husband indicated that if he knew the car had been wrecked he may have tried to negotiate a lower purchase price because he liked the car. However, even if Motors's alleged deceptive practices caused Small to pay more than the car was worth, she failed to present evidence of the car's fair market value at the time of purchase. Since Small has not shown actual damages by reason of Motors's alleged violation of the FBPA, Motors is entitled to summary judgment on this claim.

5. Small claims the trial court erred in granting summary judgment to Motors on her claim under the Magnuson-Moss Warranty Act, 15 USC § 2301 et seq. Again, we disagree.

15 USC § 2308 (a) provides in relevant part that "[n]o supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer product if . . . such supplier makes any written warranty to the consumer with respect to such consumer product." See also *Freeman v. Hubco Leasing*, 253 Ga. 698, 703 (2) (324 SE2d 462) (1985). The Magnuson-Moss Warranty Act also provides that if the consumer prevails on a claim under an express warranty, implied warranty or service contract, she may recover "cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff." 15 USC § 2310 (d) (2).

Small contends that Motors gave a written warranty on the BMW which was inconsistent with a disclaimer of implied warranties, and that she may therefore pursue her implied warranty claim. However, even if the Magnuson-Moss Warranty Act prevented Motors from disclaiming an implied warranty, Small must still prevail under her state law claim in order to recover additional damages. See, e.g., *Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313, 314 (3) (401 SE2d 328) (1991) (Magnuson-Moss Warranty Act does not control liability under state law claims). As in Division 2 above, Motors is entitled to summary judgment on Small's implied warranty claims. The Magnuson-Moss Warranty Act does not establish an independent basis for

liability. Id. Therefore, the trial court correctly awarded summary judgment to Motors on this claim.

6. Small contends the trial court erred in granting summary judgment to Motors on her Odometer Act claim. We agree.

The Odometer Act provides that persons who violate the chapter with intent to defraud are subject to a civil action for three times the actual damages or $1,500, whichever is greater. 49 USC § 32710 (a). A person transferring ownership of a motor vehicle must disclose "that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." 49 USC § 32705 (a) (1) (B). Evidence shows that Motors gave Small a signed odometer disclosure statement that did not have a check mark by the box on the statement that would indicate there was an odometer discrepancy. However, Motors attached to its motion for summary judgment what appears to be the same disclosure statement, but with the box checked indicating "WARNING — ODOMETER DISCREPANCY." Thus, a jury could conclude that a Motors representative added the check mark after the transaction, indicating that Motors knew that it failed to inform Small about an odometer discrepancy of which it was aware. See, e.g., *Huycke v. Greenway*, 876 F2d 94, 95 (11th Cir. 1989) (absent explanation, a dealer's failure to disclose an incorrect odometer reading is evidence of its intent to defraud).

Motors contends that Small's claim must fail because it was not brought within the two-year limitation period. Although an Odometer Act claim must be brought within two years from the date liability accrues, the limitation period is subject to the federal discovery rule, which provides that "a cause of action sounding in fraud accrues either on the date a plaintiff discovers the fraud or on the date that plaintiff could have, in the exercise of reasonable diligence, discovered the fraud." *Carrasco v. Fiore Enterprises*, 985 FSupp. 931, 936 (B) (1) (D.C. Ariz. 1997). Small deposed that she does not remember any verbal representations about the odometer, and the disclosure form fails to show that a discrepancy existed. As Small purchased the BMW on or about June 7, 1999, and sued for odometer fraud on July 24, 2001, a jury could conclude that Small became aware of the alleged fraud, or would only have discovered the alleged fraud in the exercise of reasonable diligence, within the two-year limitation period. Indeed, the evidence does not show conclusively that Small had any reason to be aware of an odometer discrepancy within the first month-and-a-half of owning the car. Accordingly, Motors was not entitled to summary judgment on Small's Odometer Act claim.

In light of our holdings above, the only questions remaining to be resolved at trial in this case relate to Motors's liability or lack thereof under the Odometer Act.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Bernes, J., concur.*

DECIDED AUGUST 8, 2005.

*Murphy A. Cooper*, for appellant.
*Brennan & Wasden, Marvin W. McGahee*, for appellee.