**FOURTH DIVISION
DILLARD, P. J.,
MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 20, 2022**

# In the Court of Appeals of Georgia

A22A0634. ATLANTA PARTNERS REALTY, LLC et al. v.
WOHLGEMUTH.

A22A0635. DENNIS et al v. WOHLGEMUTH.

MARKLE, Judge.

In 2018, Stefanie Wohlgemuth purchased a home from Rodney and Bernadette Dennis. The following year, Wohlgemuth discovered significant structural issues with the home, and learned the cost of repairs would exceed the purchase price. Wohlgemuth sought to rescind the purchase and, when that was unsuccessful, she filed suit against the Dennises, their real estate agent, Kathy Coots, and the company with which Coots was affiliated, Atlanta Partners Realty d/b/a Keller Williams Realty ("APR").[1] In her complaint, she sought recission of the purchase agreement, and

---

[1] For ease of reference, we refer to Coots and APR collectively as "the Coots defendants."

alleged breach of contract, fraud, negligence, and violations of the Brokerage Relationships in Real Estate Transactions Act, OCGA § 10-6A-1 et seq. ("BRRETA"), arising from the failure to disclose the structural defects.[2] The Dennises and the Coots defendants filed motions for summary judgment, both of which the trial court denied. The trial court issued a certificate of immediate review, and we granted the interlocutory appeal. The Dennises and the Coots defendants now appeal, arguing that the trial court erred by denying their motions for summary judgment. For the reasons that follow, we reverse.

Summary judgment is warranted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See *D'Elia v. Phillips Edison & Co.*, 354 Ga. App. 696, 697 (839 SE2d 721) (2020). We review de novo the denial of a motion for summary judgment, and we construe the evidence in the light most favorable to the nonmovant. See id.

---

[2] Wohlgemuth also named as defendants the company that did repair work prior to the purchase and the company that conducted her home inspection, alleging negligence, gross negligence, and breach of contract. These defendants did not file motions for summary judgment and remain as parties in the case. Additionally, the trial court granted a default judgment against the company that completed the repair work. Because this appeal involves only the Dennises, and the Coots defendants, we do not discuss those allegations related to the other defendants, and we refer to the third amended complaint as the operative complaint.

So viewed, the record shows that in early 2018, the Dennises decided to sell their home in Gwinnett County, and they contacted Kathy Coots, an independent realtor affiliated with APR, to act as their real estate agent. When Coots met with the Dennises at their home to discuss the potential sale, she noticed a slope in the kitchen floor. She recommended that the Dennises obtain a pre-listing inspection, which they did. The inspector noted water damage under the sink cabinet, moisture and mold in the crawl space, and broken floor joists under the kitchen, leaving the area without sufficient structural support. The inspector recommended repairs be made, including the installation of additional support beams, by a licensed structural and foundation contractor.

Coots gave the Dennises the names of some contractors and mold remediators. However, the Dennises hired a handyman affiliated with APR to complete the repairs, and the handyman added a support beam and some concrete pillars to address the structural issues. Coots never asked about the repairs and did not monitor the work or verify the repairs were done. The Dennises believed the handyman fixed the issues and, after the work was finished, they met with Coots again and signed the listing agreement to put the house on the market.

Wohlgemuth made an offer above the asking price to purchase the house and signed a Purchase and Sale Agreement ("the Agreement"). Per the terms of the Agreement, (1) the Coots defendants did not owe Wohlgemuth any duty except as set forth in BRRETA; (2) neither party had relied on any representations by the Coots defendants; (3) Coots had no obligation to alert Wohlgemuth to any issue with the property if it "could have been revealed through . . . inspection by a professional home inspector or construction expert"; and (4) "[n]o representation, promise or inducement not included in this Agreement shall be binding upon any party[.]" The Agreement also included a clause stating that the Dennises' representations about the property would survive the closing. The parties added a stipulation that the seller's disclosures were not attached to the Agreement, but that they would be provided, and that if Wohlgemuth found the property to be unacceptable after receiving the seller's disclosures, she could terminate the sale.

Shortly thereafter, the Dennises completed the required seller's disclosures, which expressly advised Wohlgemuth that "[i]f an inspection of the Property reveals problems or areas of concern that would cause a reasonable Buyer to investigate further, Buyer should investigate further." In these disclosures, the Dennises noted that they had repaired water damage along the front walls of the house; added

4

structural reinforcement to support a weakened beam in the crawl space; and replaced the kitchen subfloor due to a water leak inside the wall behind the kitchen sink.[3] They also marked "no" when asked if there had been any work done without a required building permit and whether there were any building code violations. After receiving the seller's disclosures, Wohlgemuth did not ask the Dennises or Coots for any additional information about the structural reinforcement, the water issues, or the repairs.

Wohlgemuth hired an inspector to conduct a home inspection prior to closing, but she did not give the inspector a copy of the seller's disclosures, and she was not present during the inspection. When the inspector accessed the crawl space, he noted water staining on the frames and main beams. Although he did not observe any areas with inadequate structural support, he was unable to access the entire crawlspace, including the area under the kitchen. In his report, the inspector graded the property

---

[3] The Dennises reported that the subfloor was replaced rather than repaired, but a subsequent home inspection found that the subfloor had been "repaired" by placing another layer of flooring on top of the existing rotten subfloor. Wohlgemuth has offered nothing to show that the Dennises were aware that the floor was not replaced, and thus this arguably incorrect word choice on the disclosure form does not show that the Dennises were concealing a defect. We further note that they reported damage to the subflooring in the disclosure to alert Wohlgemuth to the defect; thus, this discrepancy does not support a claim of active or passive concealment.

as "fair," and noted "cracking and settling" around the foundation and that additional structural pier supports had been installed. He advised "consult with seller about nature of this, monitor and repair as needed." The report also contained a photo of the new structural supports in the crawlspace.

Wohlgemuth reviewed the report prior to closing, but never discussed the report with the inspector, nor did she contact him with any questions about his findings. Additionally, Wohlgemuth never asked the Dennises for additional information about the structural supports, despite the inspector's recommendation to do so. Instead, Wohlgemuth informed the Dennises that some minor repairs needed to be completed, and they agreed to lower the sale price to account for those costs.

About eight months after the closing, Wohlgemuth discovered that a massive water leak had caused significant damage and rotting under the kitchen sink. She also discovered that there were major structural issues in the crawl space and subflooring that had not been repaired properly, leading to catastrophic structural damage to the house. Wohlgemuth retained a construction company to review the damage and necessary repairs, and it determined that the previous repairs were defective and did not comply with building codes. The construction company reported that the damage in the crawl space was "clearly evident," and it was visually obvious that the prior

repairs had not been done properly.[4] According to its estimate, the cost to repair the home exceeded the purchase price.

After Wohlgemuth unsuccessfully sought to rescind the home purchase, she filed the instant suit, alleging recission and breach of contract against the Dennises; and fraud, fraud in the inducement, constructive fraud, negligence, gross negligence, and violations of BRRETA as to the Dennises and the Coots defendants. In her complaint, Wohlgemuth alleged that the Dennises and Coots concealed and failed to disclose the extent of the structural damage; misrepresented the repair work that was performed without adherence to building codes; omitted information related to the damage and repair work; and failed to disclose the pre-listing inspection report. She also sought attorney fees under OCGA § 13-6-11.

Both the Dennises and the Coots defendants filed motions for summary judgment. Following a hearing, the trial court denied the motions, but issued a certificate of immediate review. We granted the Coots defendants' interlocutory appeal, and both the Coots defendants and the Dennises now appeal.

---

[4] Although this report is hearsay, Wohlgemuth submitted it in her response to the motion for summary judgment, and we may consider unobjected-to hearsay in reviewing a motion for summary judgment. *Patterson v. Kevon, LLC*, 304 Ga. 232, 234, n. 3 (818 SE2d 575) (2018); *DirecTV, LLC v. White*, 355 Ga. App. 404, 408 (1), n. 5 (844 SE2d 289) (2020).

To begin, we note that,

> [g]enerally speaking, caveat emptor ("Let the buyer beware") is a common-law doctrine which serves as the general rule with regard to the purchase of realty. The long-standing recognition of the existence of an exception to the application of caveat emptor where the seller's fraud induced a purchaser of realty to buy the land makes caveat emptor unavailable as a defense to a seller, whether a builder or non-builder, when the seller engages in fraud, whether it be "active fraud" or "passive concealment fraud." Thus, where the seller of a house knows the house has serious defects and fails to disclose the defects to the buyer who is unaware of the defects and could not have discovered them in the exercise of due diligence, the suppression of the facts constitutes fraud to which caveat emptor is not a viable defense.

(Citation and punctuation omitted.) *Reininger v. O'Neill*, 316 Ga. App. 477, 480 (729 SE2d 587) (2012); *Southern v. Floyd*, 89 Ga. App. 602 (1) (80 SE2d 490) (1954). With this framework in mind, we turn to the issues on appeal.[5]

*Case No. A22A0634*

---

[5] Because the Agreement contained a survival clause, the merger clause does not prevent Wohlgemuth from bringing her fraud claims. See *Northwest Plaza v. Northeast Enterprises*, 305 Ga. App. 182, 185, 190-191 (3) (a) (699 SE2d 410) (2010) (party could sue for fraud where contract contained survival clause); compare *Ainsworth v. Perreault*, 254 Ga. App. 470, 472 (1) (563 SE2d 135) (2002).

8

In this appeal, the Coots defendants argue that the trial court erred by denying their motion for summary judgment because the claims for fraud, negligence, and BRRETA violations fail as a matter of law, and that, in the absence of a viable cause of action, the claim for attorney fees fails as well. We consider each of these causes of action in turn and agree that these defendants were entitled to summary judgment.

1. *Fraud claims*.

The Coots defendants first argue that the fraud, constructive fraud, and fraud in the inducement claims fail because they did not have actual knowledge of any defect beyond what was identified in the disclosure; they did not make any false statements or omissions; and Wohlgemuth cannot establish justifiable reliance as a matter of law. We agree.

> The tort of fraud has five elements: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff[] to act or refrain from acting; (4) justifiable reliance by plaintiff[]; and (5) damage to plaintiff[]. Failure to show, in opposition to summary judgment, some evidence from which each element could be found by a jury allows the action to be disposed of summarily. The law in Georgia is well-settled that in the purchase and sale of real estate there is an underlying principle of law that one cannot be permitted to claim that [s]he has been deceived by false representations about which [s]he could have learned the truth of the matter and could have avoided damage. When the means

9

of knowledge are at hand and equally available to both parties if the purchaser does not avail [herself] of these means [s]he will not be heard to say, in impeachment of the contract, that [s]he was deceived by the representations of the seller. When a buyer could have protected [herself] by the exercise of due diligence, [s]he cannot show justifiable reliance on [her] part. Whether a plaintiff could have protected itself by the exercise of due diligence is generally a question for the jury; however, an exception occurs when a plaintiff cannot offer evidence that [s]he exercised [her] duty of due diligence to ascertain the truth and to avoid damage.

(Citations and punctuation omitted.) *BPP069, LLC v. Lindfield Holdings*, 346 Ga. App. 577, 582-583 (816 SE2d 755) (2018); see also *Real Est. Intl. v. Buggay*, 220 Ga. App. 449, 451 (2) (469 SE2d 242) (1996) ("One may fail to exercise due diligence as a matter of law.") (citation and punctuation omitted).

With regard to a claim for constructive fraud, there is no requirement to show an intent to deceive. *Lawyers Title Ins. Corp v. New Freedom Mortg. Corp.*, 285 Ga. App. 22, 25 (1) (645 SE2d 536) (2007); see also OCGA § 23-2-51.

Fraud in the sale of real estate may be predicated upon a wilful misrepresentation, i.e., the seller tells a lie. In addition, fraudulent inducement of a sale may be based on claims of fraudulent concealment where the seller, who knows of the defect, either (1) takes active steps

10

to conceal it and prevent the buyer from discovering it or (2) passively conceals the defect by simply keeping quiet about it.

(Citations omitted.) *Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 676 (1) (754 SE2d 640) (2014); see also *Ainsworth v. Perreault*, 254 Ga. App. 470, 474-475 (2) (563 SE2d 135) (2002); *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 748 (5) (557 SE2d 76) (2001) ("An action for fraud in the sale of real estate can be based on wilful misrepresentation, active concealment, or passive concealment[.]").

Pretermitting whether the other elements of fraud exist, the Coots defendants were entitled to summary judgment because there was no evidence from which a jury could find that Wohlgemuth justifiably relied on any statement or omission by these defendants. *Buggay*, 220 Ga. App. at 451 (2). In her deposition, Wohlgemuth conceded that she never spoke with Coots and Coots never made any statements to her about the condition of the property. She also acknowledged that the Agreement provided that she was not relying on any statement or omission by Coots. This testimony alone defeats the fraud claims against the Coots defendants.

Moreover, to establish justifiable reliance, the buyer must have exercised due diligence. *BPP069, LLC*, 346 Ga. App. at 582-583; see also *Fowler v. Overby*, 223 Ga. App. 803, 804 (1) (478 SE2d 919) (1996). Here, the seller's disclosure and the

11

home inspector's report both alerted Wohlgemuth to structural issues. And the inspector's report, which Wohlgemuth concedes she reviewed prior to closing, went so far as to advise her to follow up on those issues. But it is undisputed that Wohlgemuth never spoke with the Dennises, the Coots defendants, or the home inspector about the damage and repairs. Nor did Wohlgemuth seek a second opinion as to the extent of the structural damage and repairs prior to closing after her inspector noted the issues. Although Wohlgemuth asserts that the parties concealed the defects, there is no evidence in the record that they did so; rather, they identified the water leak, subflooring, and structural repairs on the disclosure, and Wohlgemuth's own contractor opined that the defects would have been noticeable when the home inspection was done. Where the buyer has the ability to discover the defect, she cannot establish justifiable reliance. See *Fann v. Mills*, 248 Ga. App. 460, 463 (1) (546 SE2d 853) (2001) ("The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity.") (citation omitted); *Fowler*, 223 Ga. App. at 805 (1); see also *Bickerstaff Real Estate Mgmt. v. Hanners*, 292 Ga. App. 554, 559 (2) (665 SE2d 705) (2008) ("In order to prove justifiable reliance, [purchaser] must show the defect could not have been discovered by it in the exercise of due diligence in the purchase

12

of the property.") (citation and punctuation omitted); *Savage v. KGE Assocs. Ltd. Partnership*, 260 Ga. App. 770, 777 (2) (a) (580 SE2d 591) (2003) (buyer could not claim to have justifiably relied on statements where buyer's own inspector identified defect prior to closing); *Smalls v. Blueprint Dev.*, 230 Ga. App. 556, 558 (1) (497 SE2d 54) (1998) (summary judgment proper where buyer did not act with due diligence when he had notice of the issue and failed to take any action); *Buggay*, 220 Ga. App. at 451 (2) (buyer's own inspector found issues and advised buyer to follow up, thus buyer's failure to do so constituted a lack of due diligence).

To the extent that Wohlgemuth alleges fraud due to Coots's failure to give her the pre-listing inspection or to disclose the defects due to the "confidential relations of the parties," we are not persuaded. We can find no case law — and Wohlgemuth has pointed to none — obligating a realtor to notify a buyer of other inspections; the agent's duty is limited to the disclosure of latent defects that could not be discovered by a reasonable inspection. Moreover, the language in the Agreement specified that Wohlgemuth was not relying on any information from the Coots defendants.[6]

---

[6] Wohlgemuth has offered nothing to show the Coots defendants were aware of and concealed any *latent* defects. *Power v. Ga. Exterminators*, 243 Ga. App. 355, 359-360 (2) (532 SE2d 475) (2000) (summary judgment in favor of seller's agent on fraudulent concealment claim was proper where there was no evidence that agent knew about termite damage or concealed this information from buyer). Notably,

13

Therefore, in light of the evidence in the record that there were multiple reports alerting Wohlgemuth to the defects and advising her to seek more information, her failure to do so demonstrates a lack of due diligence on her part, and she cannot show justifiable reliance to support her claims of fraud. As a result, the Coots defendants were entitled to summary judgment on the fraud claims.

2. *Negligence and BRRETA claims*.

The Coots defendants assert that the negligence claims fail because their only duty to Wohlgemuth was under BRRETA, as the parties expressly agreed to limit the Coots defendants' duty in the Agreement. They further argue that the BRRETA claims fail because Coots was only obligated to report defects of which she was aware and that could not be discovered by the home inspector. This argument has merit.

To bring a negligence claim, Wohlgemuth must establish "proof of duty, breach of duty, causation, and damages." *Ikola v. Schoene*, 264 Ga. App. 338, 341 (1) (590

Wohlgemuth's contractor was able to discover the defects even after the repairs were made. Wohlgemuth's complete failure to ask the Dennises about the disclosures after being advised to do so is just one example of her failure to exercise due diligence. Compare *Brookshire v. Digby*, 224 Ga. App. 512, 517 (481 SE2d 250) (1997) (whether purchaser exercised due diligence where she conducted two thorough inspections, and asked questions about defects, but was given false answers, was question of fact).

SE2d 750) (2003). Here, the parties signed the Agreement, which limited Coots's duties, and Wohlgemuth's claims of negligence, to those arising under BRRETA. Id. at 341-342 (1) (real estate agent's duty that formed basis of negligence suit arose under BRRETA).

> The BRRETA was enacted to govern the relationships between sellers, landlords, buyers, tenants, and real estate brokers and their affiliated licensees to the extent not governed by specific written agreements between and among the parties. In place of general fiduciary duties, the Act enumerates specific duties which real estate brokers must exercise with reasonable care.

(Citations and punctuation omitted.) *Starks v. Carver*, 360 Ga. App. 366, 368 (1) (861 SE2d 193) (2021); see also OCGA §§ 10-6A-2 (a); 10-6A-5. Specifically, the Act provides that,

> [a] broker engaged by a seller shall timely disclose the following to all parties with whom the broker is working: (1) All adverse material facts pertaining to the physical condition of the property and improvements located on such property including but not limited to material defects in the property . . . which are actually known by the broker *which could not be discovered by a reasonably diligent inspection of the property by the buyer*[.]

15

(Emphasis supplied.) OCGA § 10-6A-5 (b) (1).[7]

Here, Wohlgemuth's claims fail as a matter of law because the record shows that Wohlgemuth was told of the structural defects, and the defects were discoverable "by a reasonably diligent inspection." OCGA § 10-6A-5 (b) (1); see also *O'Dell v. Mahoney*, 324 Ga. App. 360, 366-367 (2) (b) (750 SE2d 689) (2013) (physical precedent only) (buyer did not exercise due diligence when he failed to conduct an inspection or review publicly available records and thus BRETTA claim was without merit). The inspector who completed the pre-listing report identified the subfloor, water leak, and structural problems, and the Dennises listed all of these issues on their disclosure. Moreover, Wohlgemuth's inspector instructed her to speak with the Dennises for more information. It is undisputed that Wohlgemuth opted not to follow

---

[7] Wohlgemuth incorrectly cites to OCGA § 10-6A-4 and OCGA § 10-6A-14 as the bases for her claim, but those provisions are inapplicable here. OCGA § 10-6A-4 addresses the duty a broker owes to a "client" or "customer," but Wohlgemuth was neither a client nor customer of the Coots defendants as those terms are defined in the Act. See OCGA § 10-6A-3 (6), (8); see also *Starks*, 360 Ga. App. at 368-369 (1) (discussing "client" and "customer" under the Act). And OCGA § 10-6A-14 (b) (3) (A) addresses the duty a broker acting as a "transaction broker" has. Here, Wohlgemuth had her own broker assisting her with the purchase, and Coots was not a transaction broker as that term is defined in the Act. See OCGA § 10-6A-3 (14).

16

up on those recommendations. Because the evidence shows that the Coots defendants acted in accordance with their duties under BRRETA, the negligence claims fail.[8]

3. *Attorney fees*.

Attorney fees under OCGA § 13-6-11 are ancillary, and thus a party is not entitled to such fees unless she prevails on the underlying claims. *Security Real Estate Svcs. v. First Bank of Dalton*, 325 Ga. App. 13, 14 (752 SE2d 127) (2013). Because Wohlgemuth has not prevailed on her claims against the Coots defendants, summary judgment was proper as to this claim as well. Id.

### Case No. A22A0635

In this case, the Dennises appeal from the denial of their motion for summary judgment. We agree that they were entitled to judgment in their favor.

4. *Fraud claims*.

---

[8] Wohlgemuth nevertheless contends that a jury could find that the Coots defendants breached their duty by recommending an unlicensed handyman, who did not obtain any permits or adhere to applicable building codes, to complete the structural repairs. Although Wohlgemuth argues that Gwinnett County building codes require permits for all structural work, we note that there are no copies of any building codes in the record. Regardless, this argument is misplaced because the evidence shows that the Coots defendants acted in accordance with their duty under BRRETA to report known defects. For this same reason, Wohlgemuth's gross negligence claim fails as well. *Patton v. Cumberland Corp.*, 347 Ga. App. 501, 505-506 (2) (819 SE2d 898) (2018).

The Dennises first argue that Wohlgemuth cannot establish all the elements of a fraud claim. For the reasons discussed in Division 1, we agree that Wohlgemuth cannot show that she justifiably relied on any statements the Dennises made, or that the Dennises took steps to conceal the defects and prevent her from discovering them.[9] *Bickerstaff Real Estate Mgmt.*, 292 Ga. App. at 559 (2); *Savage*, 260 Ga. App. at 777 (2) (a); *Fann*, 248 Ga. App. at 463 (1) (no justifiable reliance where buyer chose not to review seller's disclosure and never spoke with home inspector about the damage he uncovered); *Smalls*, 230 Ga. App. at 558 (1); *Buggay*, 220 Ga. App. at 451 (2); compare *Napier v. Kearney*, 359 Ga. App. 196, 199 (2) (a) (855 SE2d 78) (2021) (jury question as to due diligence and concealment of the defects); *Conway v. Romarion*, 252 Ga. App. 528, 533 (3) (557 SE2d 54) (2001) (due diligence and active concealment were questions for the jury where the damage may have been concealed

---

[9] The cases Wohlgemuth cites in her brief are distinguishable. See, e.g., *Akins v. Couch*, 271 Ga. 276, 278-279 (3) (b) (518 SE2d 674) (1999), disapproved of on other grounds, *Gilliam v, State*, 312 Ga. 60, 64 (860 SE2d 543) (2021); *Salinas v. Skelton*, 249 Ga. App. 217, 221-222 (2) (547 SE2d 289) (2001). In those cases, there was evidence that the seller and the agent knew of the defect and did not inform the buyer. Here, however, the Dennises listed the defects on their disclosure.

by the seller's belongings). Thus, the trial court erred by denying the Dennises'

motion for summary judgment on the fraud claims.[10]

5. *Breach of contract claim*.

The Dennises next argue that they were entitled to summary judgment on the

breach of contract claim because Wohlgemuth has not identified any contract

provision that they breached. We agree that summary judgment was warranted on this

claim.

Here, Wohlgemuth argued that the Dennises breached their duty to disclose

latent defects in the property, and that this obligation survived the closing. "The

elements for a breach of contract claim in Georgia are the (1) breach and the

(2) resultant damages (3) to the party who has the right to complain about the contract

---

[10] Wohlgemuth also included a count for recission. "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citation and punctuation omitted.) *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011); see also OCGA § 13-4-60. Here, Wohlgemuth sent a demand letter to the Dennises to rescind the sale, and then filed suit when they rejected her claim. The parties do not address recission on appeal, and it appears that she has elected to affirm the contract. Regardless, our conclusion here that she could not show justifiable reliance would be fatal to her claim for recission as well as to her claims for fraud. *Villalobos v. Atlanta Motorsports Sales*, 355 Ga. App. 339, 346 (1) (844 SE2d 212) (2020).

being broken." (Citations omitted.) *Bazemore v. U. S. Bank Natl. Assn.*, 363 Ga. App. 723, 731 (e) (872 SE2d 491) (2022).

"The first rule that courts must apply when construing contracts, including real estate contracts, is to look to the plain meaning of the words of the contract. The matter of contract construction is a question of law for the Court that is subject to de novo review." (Citation omitted.) *Reynolds Properties v. Bickelmann*, 300 Ga. App. 484, 487 (685 SE2d 450) (2009).

Wohlgemuth's claim fails as a matter of law because the Dennises were required by the terms of the Agreement to disclose any latent defects of which they were aware, and they did so. See *Southern v. Floyd*, 89 Ga. App. 602 (1) (80 SE2d 490) (1954). On the seller's disclosure, they noted a previous water leak, replacement of the subfloor, and the installation of a support beam in the crawl space. There was no evidence in the record that the Dennises knew the damage exceeded what they reported, or that they failed to disclose any other issues *of which they were aware*.

To the extent that there was other damage identified by the pre-listing inspection or by the inspector Wohlgemuth hired, the Dennises had no obligation to notify Wohlgemuth of any of the defects these inspectors identified because their obligation covers only *hidden* defects. See *Southern*, 89 Ga. App. at 602 (2).

Wohlgemuth's own contractor opined that the damage was so extensive that it would have been discoverable during an inspection. Wohlgemuth has proffered no evidence that the Dennises breached the Agreement, and thus, they were entitled to summary judgment on that claim.

6. *Negligence and gross negligence claims*.

The Dennises argued that the negligence and gross negligence claims are meritless because there was no duty to repair the house in compliance with building codes. We agree.

The Dennises had a duty to disclose defects of which they were aware, and the record shows that they complied with their duty. Absent some evidence that they withheld information of a known latent defect, or that they mislead Wohlgemuth about a defect such that there was active or passive concealment, there is no basis for a negligence suit against them. See *Cendant Mobility Financial Corp. v. Asuamah*, 285 Ga. 818, 821-822 (684 SE2d 617) (2009) ("In the case at bar, there being no fraud or breach of contract . . . it is inappropriate to found a cause for negligence on mere defective or inadequate conditions in a 'used' house, about which the buyer was not overtly or passively misled. Caveat emptor is still the general rule.") (citation and punctuation omitted); see also *Pankowsky v. Sasine*, 218 Ga. App. 646, 647 (3) (462

21

SE2d 791) (1995) (no negligence claim against seller who was not also the builder even where seller made additions to the house); *Swiedler v. Ferguson*, 195 Ga. App. 364, 365-366 (1) (393 SE2d 456) (1990) ("There is probably no such thing as a perfect house, especially one that has suffered the inevitable wear and tear of age and of being lived in; to hold the homeowner liable for any such defect would be to hold all homeowners liable for every flaw and defect, when in fact the purchaser knows or is placed upon reasonable notice that the house is not new and, almost certainly, not perfect."). Wohlgemuth has offered nothing but speculation to show that the Dennises concealed any defect or were aware of any other defect beyond those listed in the disclosure, and "[a]llegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment." (Citation and punctuation omitted.) *Hamburger v. PFM Capital Mgmt.*, 286 Ga. App. 382, 385 (1) (a) (649 SE2d 779) (2007); see also *Napier*, 359 Ga. App. at 200 (2) (b) ("[a] motion for summary judgment cannot be denied based on speculation and conjecture.") (citation and punctuation omitted). The only evidence in the record confirms that the Dennises identified the defects and that they believed the defects had been repaired. Accordingly, and in conjunction with our conclusions that there is no breach of contract or fraud claim that can survive summary judgment, the Dennises were

22

entitled to summary judgment on the negligence claim.[11] See *Cendant Mobility Financial Corp.*, 285 Ga. at 821-822.

7. *Attorney fees*.

Finally, for the reasons given above, Wohlgemuth cannot prevail on her claims against the Dennises. Thus, she is not entitled to attorney fees, and summary judgment was proper as to this claim as well. *Security Real Estate Svcs.*, 325 Ga. App. at 14.

*Judgments reversed. Dillard, P. J., and Mercier, J., concur*.

---

[11] Wohlgemuth also argues that the Dennises should have known the repairs were not completed properly because the handyman was not a licensed contractor and the cost of the repairs was minor. Thus, she argues that they failed "to exercise a degree of care that every man of common sense exercises." But the record shows that the Dennises were told the repairs had been completed, and there is no evidence that they acted carelessly. See *West Asset Mgmt. v. NW Parkway, LLC*, 336 Ga. App. 775, 790-791 (7) (784 SE2d 147) (2016) (negligence claim that was based on improper repairs failed where there was no evidence defendants acted carelessly). We find no law, and Wohlgemuth has not pointed to any, that requires the seller to guarantee the quality of the repair work. All the seller is required to do is to disclose any defect that could not be discovered by a reasonable inspection. *Cendant Mobility Financial Corp.*, 285 Ga. at 821-822; *Swiedler*, 195 Ga. App. at 365-366 (1). The Dennises satisfied this duty. *Southern*, 89 Ga. App. at 602 (2).